# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

JOHNNIE MCMILLION,          )
                               )
        Plaintiff,          )
                               )
        v.                    )        CAUSE NO. 3:12-CV-673-TLS
                               )
SHERIFF MICHAEL F.         )
MOLLENHAUER, *et al.*,        )
                               )
        Defendants.       )

## OPINION AND ORDER

The pro se Plaintiff, Johnnie McMillion, has sued four individuals she believes violated her rights under the First Amendment and various civil rights laws. The Plaintiff's pleading points to six distinct events that she maintains were illegally motivated by a desire to retaliate against her for failing to support Defendant Sheriff Michael F. Mollenhauer's primary election campaign, or were motivated by her race, gender, or age. The Plaintiff also cites the Family Medical Leave Act, and to disparate treatment under the Act, as a basis for recovery. The Plaintiff and all the Defendants have moved for summary judgment. For the reasons stated below, the Court finds that the Defendants are entitled to judgment as a matter of law on all claims.

## PROCEDURAL BACKGROUND

"[A] district court cannot properly act on a motion for summary judgment without giving the opposing party a reasonable opportunity to submit affidavits that contradict the affidavits submitted in support of the motion and demonstrate that there is a genuine issue of material fact which precludes granting the defendants summary judgment." *Lewis v. Faulkner*, 689 F.2d 100,

101 (7th Cir. 1982); *see also Timms v. Frank*, 953 F.2d 281, 285–86 (7th Cir. 1992). The purpose of the notice is to warn an unrepresented party of the consequences of failing to respond with affidavits, or other evidence, as distinct from responding with argument. *Bryant v. Madigan*, 91 F.3d 994, 996 (7th Cir. 1996). Unless notice is sent to an unrepresented party that outlines the consequences of failing to respond to a motion for summary judgment, any grant of summary judgment may be invalid. *Id.* The Northern District of Indiana has adopted a local rule that requires "[a] party seeking summary judgment against an unrepresented party" to "serve that party with the notice contained in Appendix C." N.D. Ind. L.R. 56-1(f). This notice thoroughly advises a pro se litigant of his or her obligations under Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1.

The Defendants filed their Motion for Summary Judgment on June 9, 2014, but did not provide the appropriate notice to the Plaintiff. Upon realizing that the Plaintiff had not received warning of the consequences of failing to respond to the Defendant's Motion with evidentiary materials, the Court directed the Defendants to provide the appropriate notice. On October 21, 2014, the Defendants issued to the Plaintiff a Notice of Summary Judgment Motion to Pro Se Litigant [ECF No. 125]. The Plaintiff then filed a "Respond to Memorandum in Support of Motion of Sheriff Mollenhauer for Summary Judgment and/or Reply in Support of Motion of Plaintiff for Summary Judgment" [ECF No. 126]. Additionally, the Plaintiff filed responses previously on June 20, 2014 [ECF Nos. 103, 104, 105, and 106], along with a Supplemental Declaration of Johnnie McMillon[1] [ECF No. 107]. The docket also contains submissions from

---

[1] In the original Complaint, the spelling of the Plaintiff's last name is McMillion. However, in other submissions, the spelling is McMillon.

the Plaintiff that she characterizes as being in response to the Defendant's reply briefs or as a reply in support of her own Motion for Summary Judgment [ECF Nos. 120, 121, 122, and 123]. The Court is satisfied that the Plaintiff has been adequately advised of summary judgment procedures and response obligations, and that the matter is ripe for this Court's review.

## TIME BARRED CLAIMS

On October 29, 2012, the Plaintiff filed a Complaint Pursuant to 42 U.S.C. § 1983. She complained that events that took place in May and August 2010 were retaliation against her for not campaigning for Sheriff Mollenhauer in the primary election, and that the August 2010 actions also constituted race discrimination. The Plaintiff claimed that she was demoted in November 2010 due to her race, age, and gender, and that in June 2011, her employer treated her differently under the Family Medical Leave Act (FMLA) because of her race. The only Defendant the Plaintiff named in her Complaint was Sheriff Michael F. Mollenhauer. On January 25, 2013, the Plaintiff filed a Motion for Leave to File Second Amended Complaint, stating that she wanted to add more information and facts. On February 4, 2013, the Plaintiff filed a "Statement of fact for Amendment to Leave of Second Complaint." The document appeared to be alleging facts and claims against the Sheriff as well as three other individuals, Sergeant Steven Vance, Captain Scott Bell, and Matron Sue Mollenhauer. The Plaintiff also attached proposed summonses for these individuals. This document was stricken as confusing, and the Plaintiff was given leave to amend her complaint. The Plaintiff filed her amended complaint on April 8, 2013.

The Defendants argue that all but three of the claims against Sheriff Mollenhauer are

barred by the statute of limitations. The other Defendants, who were added to this litigation through the Amended Complaint, also assert the statute of limitations as a bar to all but one of the Plaintiff's claims. Because § 1983 does not provide for a specific statute of limitations, federal courts look to the law of the state where the injury occurred to determine the statute of limitations in a § 1983 case. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985); *Kelly v. City of Chi.*, 4 F.3d 509, 510 (7th Cir.1993). Specifically, they incorporate the forum state's limitations period for personal injury claims, *Malone v. Corr. Corp. of Am.*, 553 F.3d 540, 542 (7th Cir. 2009), which in Indiana is two years, Ind. Code § 34–11–2–4.

The Plaintiff has not asserted timely First Amendment retaliation or race discrimination claims with respect to the allegations that Captain Bell asked why the Plaintiff placed a trustee in the kitchen to spy on Matron Mollenhauer (May 2010) and that Matron Mollenhauer accused the Plaintiff of screaming and cursing at Matron Mollenhauer and Mike Jones (August 2010). The statute of limitations for these § 1983 claims expired in May 2012 and August 2012—two years after the alleged retaliatory events. The October 29, 2012, Complaint did assert timely claims against Sheriff Mollenhauer for the November 2010 demotion and the June 2011 medical leave.

The Defendants who were added to the lawsuit through the Plaintiff's amended pleading, however, are only answerable for the June 2011 events. The amendment, sought in January 2013, was too late to add defendants for the November 2010 event because the statute of limitations had already run. *See Wood v. Worachek*, 618 F.2d 1225, 1229 (7th Cir. 1980) ("[A] new defendant cannot normally be substituted or added by amendment after the statute of limitations has run.").

For completeness of the record, the court also finds that the Plaintiff's amendments do

not satisfy the rule of relation back under Rule 15(c)(1)(C). The rule allows an amendment that changes the party against whom a claim is asserted to "relate back" as if it were filed on the date of the original pleading when:

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(B) and (C).

The Plaintiff's amendments do not relate back to the original complaint because she did not make a "mistake" concerning the identity of the proper party within the meaning of Rule 15(c)(1)(C)(ii). *See King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000) (noting that the mistake requirement is independent from the other requirements for relation back). The individuals named as Defendants in the amended pleading were merely mentioned in the body of the original Complaint where the Plaintiff set forth the factual support for her claims. But the Plaintiff only listed one Defendant, Sheriff Michael F. Mollenhauer (Compl. 8), in the section of the Complaint where the Plaintiff was instructed to list everyone she was suing. Moreover, on the first page of the Complaint, the Plaintiff responded emphatically and unambiguously to the inquiry "How many defendants are you suing." She wrote, "One!" (Compl. 1.) "It is the plaintiff's responsibility to determine the proper party to sue and to do so

before the statute of limitations expires." *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006). "A plaintiff's ignorance or misunderstanding about who is liable for his injury is not a 'mistake' as to the defendant's 'identity.'" *Id.*

## STATEMENT OF FACTS

The Plaintiff's pleading challenges six terms and conditions of employment: (1) in May of 2010, Captain Bell asked why the Plaintiff placed a trustee in the kitchen to spy on Matron Mollenhauer; (2) in August of 2010, Matron Mollenhauer accused Plaintiff of screaming and cursing at Matron Mollenhauer and Mike Jones because the Plaintiff did not campaign for Sheriff Mollenhauer; (3) on August 18, 2010, the Plaintiff received a written reprimand from Sergeant Vance, which was later voided by Captain Bell; (4) on November 10, 2010, the Plaintiff was demoted to jail officer while other corporals of a different race, sex or age were not; (5) beginning on December 6, 2010, the Plaintiff went on FMLA and was not paid during that leave; and (6) on June 2, 2011, the Plaintiff was terminated for failing to return to work following the expiration of her FMLA leave. As explained above, the first three events are time-barred. Sheriff Mollenhauer must defend the last three alleged unlawful acts, and the later-added Defendants are answerable only to the June 2011 termination.

The Plaintiff began her employment with the LaPorte County Sheriff's Office on October 23, 1996. She was hired as a jailer, assigned to correction duties. In 2000, Chief Dale Ott gave the Plaintiff the title of "corporal," but this title did not result in an increase in pay or change in benefits. The Plaintiff was responsible for laundry and commissary, which she took care of on an administrative schedule, Monday through Friday. The Plaintiff did not have any authority over

other jail officers. Corporal is not a title recognized in the Sheriff Department's chain of command or its pay scale.

Sheriff Mollenhauer was elected in 2006. In 2008, Sheriff Mollenhauer appointed Captain Scott Bell as the Jail Commander. In this position, Captain Bell was responsible for overseeing all jail operations and personnel. After Captain Bell took his position as Jail Commander, Sheriff Mollenhauer and Captain Bell had a discussion about those jailers bearing the title of "corporal." (Sheriff Aff. ¶ 13, ECF No. 109-3; Bell Aff. ¶ 8, ECF No. 109-4.) Neither Sheriff Mollenhauer nor Captain Bell knew why these jailers were given the title by the previous administration, and they were unable to locate any explanation or documentation in any personnel file or office file reflecting any formal change. (Sheriff Aff. ¶¶ 15–18, Bell Aff. ¶¶ 10–12.) At that time, the Sheriff's Office did not recognize a formal rank of corporal, and the jailers bearing the title did not have any authority over jailers or employees of the Sheriff's Office or receive any additional pay or benefits.

Sheriff Mollenhauer and Captain Bell discussed the merits of creating a new rank of corporal to reward and promote officers who were responsible for supervising other officers. This would require additional funding, but Sheriff Mollenhauer decided not to request the formal addition of a corporal position or additional funding from the County Council due to budgetary constraints. However, in preparation for the change to a formal rank, he did not assign the designation to any officers when jailers with the corporal title left through attrition.

Sergeant Stephen Vance became the Plaintiff's supervisor in late May or June 1, 2010, when he was appointed as Assistant Jail Commander. Sergeant Vance and Captain Bell remained Plaintiff's supervisors through the remainder of her employment with the Sheriff's Office. Also

in June 2010, the Sheriff's Office implemented a new computerized record-keeping system. Sergeant Vance was responsible for overseeing implementation of the change, which all employees were required to begin using. The Plaintiff, who previously kept her records and reports in a personal notebook that she carried with her, was very resistant to learning or using the new system in her role in overseeing the inmate trustees and inmate commissary accounts. The jail administration considered the system important for creating and maintaining accurate records for these areas of operation.

In 2010, Sheriff Mollenhauer and Captain Bell removed the corporal title from the three remaining jailers who had the title, including the Plaintiff. The change did not impact their pay or employment benefits, as the designation never carried any accompanying benefits or promotion. After the individual jailers were informed of this change, Captain Bell sent an email to all employees notifying them that the title of corporal had been abolished. Also in 2010, Sheriff Mollenahuer, Captain Bell, and Sergeant Vance took action to deal with personnel issues involving the Plaintiff and another employee, Michael Woday. As a result, Sheriff Mollenhauer made the decision to remove Woday from an area with a particular supervisor with whom Woday conflicted by transferring him to administrative duties. He also decided to transfer the Plaintiff to correctional duties where less recordkeeping would be required, as she was still refusing to use the new system to keep proper records of commissary items and for communications. When the Plaintiff was transferred to correctional duties, she moved from an administrative schedule to shift work. Her pay and benefits remained the same.

On December 6, 2010, the Plaintiff reported to the Sheriff's Office that she was ill and requesting leave under the FMLA. The leave was granted, and the Plaintiff was informed of her

rights. Her leave expired on March 5, 2011. The Plaintiff was scheduled for duty on March 7 and 8, 2011, but did not return to work after the expiration of her leave. On March 8, 2011, the Department of Human Resources sent the Plaintiff a letter requesting that the Plaintiff contact Captain Bell by March 14, 2011, to communicate her intent to work, and advising that a failure to respond would indicate to the County that she resigned from her position.

The Plaintiff did not contact Captain Bell as directed in the letter, but attempted to call him on March 17, 2011. She spoke with the administrative assistant. However, she did not communicate that she intended to return to work. Then, on March 17, 2011, the Plaintiff's psychologist submitted a Progress Note to Captain Bell indicating that Plaintiff could not return to work until the end of May. The Sheriff's Office held Plaintiff's position open until the end of May, but Plaintiff did not return to work, nor did she provide any further information regarding her intent to return to work. In accordance with County policy, on June 2, 2011, the Department of Human Resources informed Plaintiff that she had been terminated for failing to return to work following the expiration of her FMLA leave.

## DISCUSSION

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, a nonmovant must be able to show that a reasonable jury could return a verdict in her favor; if she is unable to "establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), summary judgment must be granted. In

ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

The only timely claims in this litigation are that (1) on November 10, 2010, the Plaintiff was demoted to jail officer while other corporals of a different race, sex, or age were not; (2) she was not paid for FMLA leave beginning on December 7, 2010, and (3) she was terminated for failing to return to work on June 2, 2011. The central question related to these claims on summary judgment is whether the record contains evidence from which a reasonable jury could conclude that the Defendants' actions on these occasions were based on the Plaintiff's race, sex, age, or any other protected action or characteristic. *See Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013) (stating that the direct approach in employment discrimination cases should be the default when the Plaintiff does not follow the burden-shifting approach of *McDonnell Douglas*).

### A. November 10, 2010, Designation from Corporal to Jail Officer and Move to Shift Work

In 2010, Sheriff Mollenhauer and Captain Bell decided to reorganize the designation of "corporal" in preparation for creating a formal position. To do so, they removed the empty title of corporal from three remaining jailers who held the title: the Plaintiff, an African-American female; Michael Jones, an African-American male; and, Bobby Blair, a Caucasian male. No jailers were permitted to retain the title of corporal, and all employees were informed that the title had been abolished.

Also in 2010, the Sheriff's Office was facing personnel issues with the Plaintiff and another employee, Michael Woday. The Plaintiff's performance evaluation noted that she was failing to comply with the absence and sick leave policies, displaying a poor attitude since the implementation of the computerized system, refusing to use the new system to keep proper records of commissary items and for communications, and was otherwise engaging in negative interactions. Officer Woday, an otherwise effective officer, was experiencing personal conflict with his supervisor. Accordingly, Sheriff Mollenhauer made the decision to transfer Woday to administrative duties to avoid this personal conflict and to transfer Plaintiff to correctional duties where less recordkeeping would be required.

On November 10, Sheriff Mollenhauer told the Plaintiff that he was moving her to correctional duties, which required that she work a shift. He also told her that she would no longer be called a corporal. When the Plaintiff was transferred to shift work, her pay and benefits remained the same.

The Plaintiff believes these employment decisions were discriminatory. The usual types of circumstantial evidence that would support an inference of unlawful discrimination are suspicious timing or ambiguous statements or behavior towards other employees in the protected group; evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and evidence that the employer offered a pretextual reason for replacing the Plaintiff with someone who was a different race or gender. *Morgan*, 724 F.3d at 995–96; *see also Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 850 n.7 (7th Cir. 2010) (stating that employment related discrimination claims under § 1983 are analyzed under the same framework governing Title VII claims). Before the Court even looks for

potential signs of discriminatory motive, it notes that the Defendant has designated evidence showing that the title change did not impact the Plaintiff's employment, and that the shift change was a lateral transfer with equal pay, benefits, and authority. Thus, these changes would not qualify as actionable adverse employment action.

The Seventh Circuit has articulated three general categories of materially adverse employment actions actionable under Title VII:(1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment. *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744–45 (7th Cir. 2002) (citations omitted). Cases in the second category involve a future, rather than present harm and are to be distinguished from cases involving "'a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance.'" *Id.* at 744 (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)). "'A transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either.'" *Id.*

The Plaintiff does not attempt to identify how the loss of the corporal title altered her employment. She refers to the change to correctional duties as a "demotion" because she was no longer in charge of the trustees, commissary, and laundry. But a "materially adverse change in

employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Conley v. Vill. of Beford Park*, 215 F.3d 703, 712 (7th Cir. 2000) (brackets omitted) (quoting *Johnson v. City of Fort Wayne*, 91 F.3d 922, 932 (7th Cir. 1996)). As the Seventh Circuit has stated, "being shifted to an essentially equivalent job that [an employee does] not happen to like as much does not a Title VII claim create." *Place v. Abbott Labs.*, 215 F.3d 803, 810 (7th Cir. 2000) (rejecting a plaintiff's argument that being "moved from an interesting job she liked that involved overseeing several other people to a boring job she didn't like and that lacked any supervisory duties" was an adverse employment action); *see also McKenzie v. Milwaukee Cnty.*, 381 F.3d 619, 625–26 (7th Cir. 2004) (finding that a police officer's transfer from position as undercover detective in drug enforcement unit to non-investigatory position in courts and auxiliary bureau did not constitute an actionable adverse employment action). The Plaintiff's simple preference for her former job does not render the job change an adverse employment action. *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 904 (7th Cir. 2005) ("A subjective preference for the former position, without more, does not demonstrate an adverse employment action."). On this basis alone, Sheriff Mollenhauer is entitled to judgment as a matter of law.

Even if the Plaintiff had succeeded in showing that the loss of the corporal designation or job change was materially adverse employment action, she did not proffer sufficient evidence of the Defendant's discriminatory motive in making these employment decisions. The Plaintiff has no evidence, direct or circumstantial, to permit a trier of fact to link her change in job title or duties to a discriminatory animus. The Plaintiff was not treated any different than the other employees who were given the corporal designation under the previous administration. With

respect to her shift change, the Defendant's employment decision is amply supported by the designated evidence, and constitutes a legitimate, non-discriminatory reason. *Cf. Grube v. Lau Indus., Inc.*, 257 F.3d 723, 726 (7th Cir. 2001) (defendant's decision was legitimate and non-discriminatory where plaintiff's employer had assessed the strength of its supervisors and determined that plaintiff was "not one of [defendant's] strongest supervisors" and that it was necessary to keep its strongest supervisors on the first shift). Sheriff Mollenhauer determined that the Plaintiff was not performing well in her position and that Woday would be a better employee for that job. (Sheriff Aff. ¶ 38). He also believed that it was necessary to remove Woday from his current position. (Sheriff Aff. ¶¶ 33, 34). The Plaintiff counters that "any fair system can see that the allegation that the Plaintiff could not do her job was not true," and that "moving the Plaintiff had nothing to do with her job performance." (Pl. Resp. ¶ 11, ECF No. 103). However, the Plaintiff does not point to any specific facts to bring this into genuine dispute. The following is the Plaintiff's argument:

> Sheriff Mollenhauer give this reason for giving the plaintiff job to a young employee (white male) because of conflict with his supervisor. If one pull the employee work worker (young white male) and compare it to the plaintiff (black female) any fair system can see that the allegation that the plaintiff could not do her job was not true. It was stated by Sgt. Steve Vance himself that she had been doing this job for years. Moving the Plaintiff had nothing to do with her job performance. It was all about harassarment, buelling, discrimination to get the plaintiff to quit or have a nervous breakdown which he succed in the breakdown. If the plaintiff was not entitle to any of the days she requested off why was they granted and not denied. The plaintiff put in long hours at LaPorte County Jail and over the 14 years of service at the LaPorte County Jail you can not find no more than 15 overtime slip.

(Pl. Resp. ¶ 11, ECF No. 103 (grammatical and spelling errors in original)). The paragraph contains unsupported conclusions and accusation, but no citations to admissible evidence to raise a contestable issue of fact whether the Defendant honestly believed the Plaintiff was resistant to

14

implementing important changes, was displaying a poor attitude, and was not complying with absence and sick leave policies. "[A] plaintiff's own opinions about her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions." *Ost v. W. Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 441 (7th Cir. 1996); *see also Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 752 (7th Cir. 2006) (noting that general statements of co-workers, indicating that a plaintiff's job performance was satisfactory, do not establish a material issue of fact on the issue of adequacy of performance). Further, the Plaintiff admits in her deposition that she does not know anything about Woday's employment record or why the Sheriff needed to move him from his shift. (Pl. Dep. 112, ECF No. 109-1.) The Plaintiff offers nothing to properly contest the Defendant's evidence concerning the basis for the employment decision, much less to suggest that it was a pretext for discrimination.

In the end, this case does not involve the kind of dispute that defeats a well-supported motion for summary judgment. "[B]efore a non-movant can benefit from a favorable view of the evidence, it must show that there is some genuine evidentiary dispute. 'Genuine,' in this context, means 'reasonably contestable.'" *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009) (quoting *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997)). The fact that the Mollenhauer and Bell made personnel changes to best utilize two of the Jail's employees is not reasonably contestable. The only disagreement is created by the Plaintiff's speculation regarding the Defendant's true motives.

> But, "[i]t is well-settled that speculation may not be used to manufacture a genuine issue of fact." *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001); *see also Borcky v. Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001) ("The mere existence of some alleged factual dispute will not defeat an otherwise

properly supported motion for summary judgment. . . . Speculation will not suffice." (internal citations and quotation marks omitted)).

*Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008); *see also Hanners v. Trent*, 674 F.3d 683, 694 (7th Cir. 2012) (noting that the "subjective beliefs of the plaintiff . . . are insufficient to create a genuine issue of material fact") (quoting *McMillian v. Svetanoff*, 878 F.2d 186, 190 (7th Cir. 1989)).

The Plaintiff has not designated evidence from which a rational jury could conclude that the Defendant took an adverse action against her on account of her gender, or any other protected characteristic or activity, as opposed to the non-invidious reason provided by the Defendant. In contrast to the Defendants' designated evidence, the Plaintiff offers speculation and unsupported accusations, conceding in her own deposition that she has no evidence that this change had anything to do with her age (Pl. Dep., at 110:6–11); she does not believe that it had anything to do with her race (Pl. Dep., at 110:12–14); and the only reason she believes that it was related to her gender was because Woday, a male officer, apologized to Plaintiff that she was going back to shift work (Pl. Dep., at 110:19–11:10). Sheriff Mollenhauer is entitled to judgment as a matter of law related to the employment decisions of November 2010.

The Plaintiff also claims that the decision to move her to correctional duties had something to do with the fact that she did not support Sheriff Mollenhauer in his election. Again, the Plaintiff's beliefs are not substantiated by the record, and she concedes that she has no evidence to support her feeling. (Pl. Dep. 112.) Sheriff Mollenhauer's request for summary judgment will be granted.

**B.      FMLA Leave/Race Discrimination**

On December 6, 2010, Plaintiff reported to the Sheriff's Office that she was ill and requested leave under the FMLA. The Plaintiff was informed in writing of her eligibility, rights, and responsibilities under the FMLA, and that she was entitled to 12 weeks of FMLA leave. The Plaintiff's FMLA eligible leave expired March 5, 2011, and she was scheduled for duty on March 7 and 8.

The Plaintiff complains that she was not paid for her FMLA leave. An employee does not have such a right under the FMLA. 29 U.S.C. § 2612(c) (providing that FMLA leave may consist of unpaid leave). Her true complaint has to do with disparate treatment; she alleges that another employee outside her protected class received paid leave, but the Plaintiff did not, so the differential treatment must have been based on her race. Sheriff Mollenhauer acknowledges that, in 2007, he allowed another employee outside the Plaintiff's protected class to remain on payroll while she was on sick leave. The circumstances surrounding this employee's leave, however, does not permit an inference of discrimination.

The jailer who was placed on sick leave in 2007 was hospitalized for a life-threatening illness that she alleged she had contracted while working in the Jail, and that she intended to file a worker's compensation claim. The Sheriff, realizing that the jailer's illness was one that could have been contracted at work, concurred with the advise of the County Attorney to extend the length of the jailer's sick leave under the County's formal policy, which allowed supervisors to grant additional paid sick leave on a case by case basis. The County Commissioner reversed the decision, instructing that paid leave was to cease immediately and that LaPorte County would not permit such action in the future. The jailer's employment was later terminated when it

became clear that she could not return to work even part time. She subsequently filed a worker's compensation claim that was settled pursuant to an agreement by the parties.

The jailer who took sick leave in 2007 is not similarly situated to the Plaintiff. Although the proposed comparator need not be identical to the plaintiff in every conceivable way, the distinctions between a plaintiff and the comparator must not be so significant that they render the comparison effectively useless. *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012); *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). The other jailer was never on FMLA leave, and the Sheriff believed she may have contracted her life-threatening illness through her work at the Jail. Moreover, the Sheriff had been instructed after extending pay to the other jailer in 2007 that he was not to do so in the future. Importantly, there is no evidence that it was Sheriff Mollenhauer or any of the other Defendants who made the decision with regard to the Plaintiff's leave, much less that their decision was based on the Plaintiff's race. The Plaintiff has not put forth evidence from which a reasonable trier of fact could conclude that the Plaintiff's race was a factor in the decision not to designate her FMLA leave as paid.

The Plaintiff's argument regarding her termination from employment is difficult to reconcile with the facts. The Plaintiff never returned to work after her FMLA leave expired, maintaining that she was not well enough to return. If an employee is unable to return to work after 12 weeks, the employee no longer has any protections under the FMLA. *Dotson v. BRP U.S. Inc.*, 520 F.3d 703, 709 (7th Cir. 2008). Additionally, her inability to work would constitute a legitimate, non-discriminatory reason to terminate her employment.

## C.    Miscellaneous Claims

The Plaintiff maintains that the Defendants attempted to intimidate her by calling her to a meeting with all white men. (Pl.'s Resp. ¶ 12.) On November 10, 2010, the Plaintiff was told to report to Captain Bell's office. (Pl. Dep. 96.)[2] When she entered the office, Sheriff Mollenhauer, Captain Bell, and Sergeant Vance were already there. (*Id.*) According to the Plaintiff, being in a room with all white males brought back a vivid memory of the Plaintiff's aunt being raped by a white male when Plaintiff was a little girl, and made her uncomfortable. (Pl. Dep. 97–98). The Plaintiff did not complain that she was uncomfortable, but claims that the men should have known she would have this reaction because they knew she was from a small town in Mississippi. According to Sheriff Mollenhauer, Captain Bell, and Sergeant Vance, they did not have any knowledge of these events, or that the Plaintiff was uncomfortable.

The Plaintiff appears to believe that the circumstances surround the meeting lends credibility to her claim that the Defendants harbored animus toward her based on her race or gender. It does not. Moreover, to the extent the Plaintiff's submissions contain other narratives about countless workplace decisions and events—unconnected to any claim—the Court does not consider them further. The Seventh Circuit has repeatedly "assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003). The Plaintiff's various submissions—given their lack of adherence to the requirements in N.D. Ind. Local Rule 56-1 and Federal Rule of Civil Procedure 56 to identify

---

[2] This is the meeting where the Plaintiff was advised that she would no longer have the corporal title and that her duties were changing.

material facts that are genuinely disputed and to support those assertions of facts by citing to particular materials in the record—would demand such scouring in order to obtain any meaning.

## THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The Plaintiff has filed a Motion for Dispositive Motion [ECF No. 92] and Memorandum Brief in Support of Dispositive Motion [ECF No. 93] with supporting documentation, which the Defendants have moved to strike [ECF No. 101] on grounds that they fail to comply with the Federal Rules of Civil Procedure, Federal Rules of Evidence, and Local Rules of this Court. The Court need not rule on the Motion to Strike, as the Court has already concluded, for the reasons stated above, that the Defendants are entitled to judgment as a matter of law. Additionally, a party opposing summary judgment is not required to respond to grounds that were not properly raised by the movant. *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006) ("The party opposing summary judgment has no obligation to address grounds not raised in a motion for summary judgment."). "A party opposing summary judgment does not have to rebut factual propositions on which the movant bears the burden of proof and that the movant has not properly supported in the first instance." *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 662 (7th Cir. 2011).

For the reasons set forth above, the Plaintiff has not presented evidence that establishes any discrimination or unlawful actions by the Defendants. Accordingly, her Motion for Dispositive Motion is denied and the Defendants' Motion to Strike is rendered moot.

## CONCLUSION

For the reasons stated above, the Court DENIES the Plaintiff's Motion for Summary Judgment [ECF No. 92], GRANTS the Defendants' Motion for Summary Judgment [ECF No. 96], and RENDERS MOOT the Motion to Strike [ECF No. 101]. The Clerk will enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on December 2, 2014.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION